Thank you. May it please the Court, I am Matt Adams on behalf of Petitioner Masoud Hosseini. I will seek to preserve four minutes for rebuttal. Given that the Board acknowledged that the government of Iran would be able to identify Mr. Hosseini as a supporter of the MEK, the Board then erred in failing to recognize that he is entitled to deferral of deportation under the Convention Against Torture. The country reports that are in the record make very clear that persons suspected of supporting the MEK are subjected to torture and often extrajudicial executions. This is not challenged by the government. There is no evidence in the record to contradict the findings of the State Department. Thus, as the dissenting Board member found, he was entitled to deferral of deportation under the Convention. The Board denied his application for deferral based upon his lack of credibility, finding that his claim was based on a chain of assumptions. But there is no dispute that supporters of the MEK are subjected to torture and often executed by the government. Rather, the Board Is there anything in those reports about whether they are leaders or, I mean, who gets apprehended and tortured and subjected to? What the record shows is that persons who are deported, and this is both from our State Department's country reports and also from the record issued by the Embassy of Iran through their office in the Embassy in Pakistan here, the record shows that persons who are deported from the United States are required to submit the documents regarding the cause of their deportation and they are interrogated and questioned regarding that deportation. And that's why the Board itself recognized that the government would be able to identify him as a member of MEK in the Board's decision on page 32 of the The question is, since they've been able to identify him as an MEK supporter, is he going to be subjected to torture? And the country reports by the State Department make clear that there is widespread and systemic torture of political dissidents, and in particular the state reports, and this goes from the state reports that are in the record from 1997 all the way up to 2003, that in particular the country of Iran targets supporters of Mujahideen or the MEK. Thus he's shown that it's more likely than not that he will be tortured and possibly executed by the government, and that's why the Board, the dissenting Board member, acknowledged that he should be granted deferral. The majority's opinion denies this based on lack of credibility, but as this Court has admonished the Board, and also in decisions like Kamal Hafez and Al-Harvey and also the Seventh Circuit in Mansour, the Board errs in over-relying on adverse credibility findings and failing to take into consider country conditions that are in the record that demonstrate that regardless of whether he's a credible individual, he will be subjected to torture. Now, these same facts – Counsel, I'm reading the Board decision, and could you point out to me on what page of the excerpts of record there's an adverse credibility finding? Was that Buttress's or is the foundation for the C.A.T. ruling? On Administrative Record, page 32, where the Board says the immigration judge correctly pointed out that while Respondent or Petitioner may have established the Iranian government can identify him as an MEK supporter, he failed to meet his burden of proving that the government would more likely than not torture him. In sum, there is nothing to show that Petitioner's claims are anything but a chain of assumptions, and those assumptions suffer from a lack of credibility, as noted previously. Okay. Thank you. The same facts that demonstrate that he's entitled to – But those assumptions suffer from a lack of credibility. Doesn't mean that he has personally been found to lack credibility because he's contradicted himself, and there's substantial evidence of that. Well, the Board's, in its decision, in the immigration judge's decision, had previously made clear that they didn't find him to have credibility, to be a credible witness. But that's in the immigration judge's finding. Yeah. Given that he had submitted two fraudulent asylum applications and had under oath made false testimony both before the asylum officer and the immigration judge. This is – in fact, his first two asylum applications were under fraudulent names or false names or false identification numbers, and he was deported in absentia in both of those proceedings. That is correct. Certainly, petitioner does not – is not able to demonstrate that he's a credible witness. But this is like the cases in Comalthus, where they found that even though the person had lied in their previous applications, the evidence in the country reports made clear that, nonetheless, that they would be subjected to torture or execution. The same facts that demonstrate that he's entitled to deferral also demonstrate that he should be granted withholding of deportation under the Act and under the Barred. And the Board found that he was statutorily precluded based upon their finding that he had engaged in terrorist activity, as defined in Section 212a3b4. Well, that's not the only basis. I mean, they also found that he was a danger to the security of the United States. That's the independent basis, right? We would submit – Based on the foregoing, we find that he is a danger to the security of the United According to Mr. Azimi, for the MEK, right?  Would it be sufficient? Would it not? If there was evidence to demonstrate that he was a fundraiser, that would certainly show that he had engaged in terrorist activity. No. You wouldn't have to find he was engaged in terrorist activities to find that he was a danger to the security. Danger to the security would be sufficient, would it not, if he was a fundraiser without engaging in terrorist activities? If you – I read the Board's decision as finding because he had engaged in terrorist activity, it therefore follows that he is a danger to the security of the United States. Not necessarily. If you read the first page, 31 of the ER, based on the foregoing – and the foregoing can be the paragraph immediately before that, which talks about his raising money for the MEK and treating the MEK safe houses. If those facts are accepted by the BIA, why isn't that sufficient to butcher, say, finding of danger to security, regardless whether individual terrorist acts delineated in the statute were committed? Because this case is similar to the one in Chima v. Ashcroft, where the Board conflated those two findings, conflated his – their finding that he had engaged in terrorist activity, and said because he had engaged in those findings, it falls matter of fact that he is also placed in danger to the security of the United States. Even if there had been a finding, if the record supported a finding that he had solicited funds, raised funds for this organization, and the Board did not then make an analysis of whether those facts, in and of themselves, demonstrate that he is a danger to the United States. Rather, the Board lumped together all the accusations that it found demonstrated that he had engaged in terrorist activity. In looking at the evidence that the Board relied on, it's notable that on the one hand, the Board recognized that Mr. Azimi, the confidential informant, was not a trustworthy individual. He had a long history of immigration fraud and a criminal record. Nonetheless, the Board relied on his testimony, finding at the time of his deposition, he had little to lose by testifying truthfully. But this is not the case. When he was testifying, not only was he receiving thousands of dollars for his cooperation, but contrary to the assertion of the government attorney before the immigration judge, he was also being processed for an S visa for lawful immigration status based upon his cooperation and investigation. And perhaps most importantly, Mr. Azimi's testimony was not based on firsthand knowledge, but was speculation and assumptions. Mr. Azimi would blithely make assertions regarding Petitioner's conduct, and then when further questioned, would readily admit he had not witnessed any such events. Kennedy. Doesn't that go to the credibility of Mr. Azimi, and isn't that a subject which the I.J. the trial I.J. determined? And are you saying that he made an error as a matter of law in crediting Mr. Azimi's testimony? I am. I'm saying here that substantial evidence in the record does not support the finding. So you have the assertions. But wait. Could I ask you a question on that, please? Yes. If you're saying substantial evidence in the record doesn't support the finding, and this one witness gave testimony supporting the finding, then as I understand what you're saying is, as a matter of law, the immigration judge could not credit that testimony as a matter of law, like it's totally outside the discretion of the fact finder. Am I reading you correctly? What I'm saying is that certainly the immigration judge is in a position to make credibility findings, and the reviewing court does not disturb those findings of credibility regarding the witness unless so compelled by the record. And I find, and what we submit, is that the record contains so many contradictions and makes clear that Mr. Azimi had no first-hand knowledge, and it was all based upon speculation, that the record does compel a finding that Mr. Azimi lacked credibility. So getting back to my question to you, are you saying accordingly that the immigration judge, as a matter of law, could not credit Mr. Azimi's testimony? That is correct. We're saying that he erred in making his factual findings. Is it a matter of making a credibility determination of the witness or deciding the competence of the testimony? I think it comprises of both parts. On the one hand If I say, well, he's a fundraiser, well, how do you know that? Well, I heard somebody say it. Right. So on the one hand, we've submitted that Mr. Azimi had no first-hand knowledge. He was not in a position to witness. And so his testimony was mere speculation. Apart from this, Did you say that Hosseini had said he was a fundraiser? If Mr. Hosseini had admitted that he was a fundraiser. I'm saying, did Mr. Azimi say that he had heard Hosseini say he was a fundraiser? At one point in the record, and this is on page 836 of the administrative record. Mr. Azimi is asked in his deposition, did Mr. Hosseini, did he ever do fundraising on behalf of MEK as a strong supporter? And Azimi answered, I haven't seen him go attend it, but he was talking about it. Perhaps in New York where he was or in Florida where he was. Question, he told you? Answer, I don't know what he was doing there. Did he ever tell you that he did fundraising for the MEK? I don't remember, I don't remember. But he told me he was recruiting, going to one of the Thailand, I believe, with MEK. So something regarding that I remember, but I don't remember what he was doing. He told you that he recruited for the MEK? Yes, something like that in Thailand. So that was the testimony involving fundraising from Mr. Azimi. Now later on in regards to the recruiting, the transcript shows that Mr. Hosseini, that comes from the recorded, the taped sessions between the confidential informant and Mr. Hosseini. And the taped session, the transcript demonstrates that Mr. Azimi said that someone approached him in Thailand and that he rejected that. And so there was no evidence of any fundraising or any recruiting. Indeed, the government's witness, the special agent in charge of the investigation. Again. You're saying there's no evidence of recruiting. But if the other witness said that Hosseini said to him that he had recruited in Thailand, isn't that some evidence? Might be contradicted by Hosseini's own testimony, but it's still some evidence if it's credited. You're right, there is some evidence regardless of its level of credibility or whether it can be contradicted if he makes that assertion. But I guess the point is even looking at assertion, he's just saying I remember that he said something about recruiting in Thailand. And then when you look back at the transcript that he refers to, the transcript makes clear that someone had attempted to recruit him. I think it's noteworthy that the government's agent, the special agent in the removal proceedings, that there was no evidence of any unlawful conduct. That means no evidence of recruiting or soliciting funds or fundraising. Those are all unlawful activities punished by the federal laws regarding terrorism. No evidence of providing material support. Given that there's no evidence of these, as acknowledged by the government's chief witness, what is left? Petitioners' participation in political demonstrations, including volunteering to be a torchbearer and distribute political newspaper. But these activities are core First Amendment activities. And the First Amendment provides that Congress shall make no law abridging the freedom of speech or of the press or the right of the people peacefully to assemble. Yet this is the very conduct at issue here. There's no allegations that those demonstrations were threatening, violent, or in any way unlawful. In fact, petitioner with thousands of other individuals across the United States gathered together side by side with United States Senators and Congresspersons to raise his voice against the tyranny of the government of Iran. This does not demonstrate a reasonable grounds to find that he's engaged in terrorist activity. And as we stated, not only did the, first of all, the government and agent conceded that there's no evidence of unlawful conduct. Moreover, the government agent also acknowledged that his information was not independent of Mr. Azimi, that all the information that he was provided was based upon the hearsay statements and the reports brought in from Mr. Azimi. And as this court found in Hernandez-Guadarrama, petitioner's and agent's summary of witnesses' reports does not provide an independent basis for a finding of removability. If statute of evidence does not support the board's finding, is that a matter of law or are we deciding fact? That's, it is, those are factual determinations. But under the section determining judicial review at section 242, this court is empowered to make those factual determinations. I'm concerned about the jurisdiction stripping. We're, we're excused from the stripping if it's a matter of constitutional or a question of law. Understood. But the jurisdiction stripping provisions in section 242 are explicit that they only apply to discretionary applications. So withholding in the applications for convention against torture aren't discretionary. And moreover, it explicitly exempts political asylum applications. So this court does have jurisdiction to review the factual determinations in his applications for political asylum withholding and relief under the convention against torture. Did you want to save some time for rebuttal? Thank you. May it please the court. My name is Bill Pecci and I represent the Attorney General, excuse me, in this appeal. Your Honor, the record clearly demonstrates as established that Mr. Hussaini submitted multiple asylum, fraudulent asylum applications. Would you please direct your attention to claims that the BIA aired on the convention against torture claim as was the opinion of the dissenting member of the BIA? With respect, Your Honor, I don't think we know what the opinion of the dissenting member was. We know that he dissented. He would have granted CAT deferral. Would you like me to direct to the burden issue? Would you go to that? Do you think that the BIA was correct in denying the convention against torture relief? Absolutely, Your Honor. Why? For two reasons. The first reason is that Petitioner, Mr. Hussaini, simply failed to meet his burden. The position of Mr. Hussaini is that he has established that he will be identified as MEK-affiliated, and that's simply not what was found below. The immigration judge specifically determined, and I'll cite you, Your Honor, to AR-262, the record at 262. The immigration judge specifically says, Respondent has failed to produce any evidence which would indicate that the government of Iran has previously or will in the future specifically identify the Respondent as a member of MEK. He goes on to say there's a possibility, but he hasn't established that. More likely than not, that will happen and will lead to torture. What about Mr. Adams' argument that after a removal, that the government of Iran reviews the immigration documents leading to it? That is his assertion, Your Honor, and that was his assertion below. But as the immigration judge found, he didn't establish that, that more likely than not, he would be identified, and that as a result of that identification, he would be subject to torture with, by or with the acquiescence. Well, what does he have to do? I, if I heard correctly, there's a statement from the embassy of Iran saying that they ask for the documents, the deportation documents or the removal documents, when the person removed appears on their doorstep. The evidence that, that Petitioner has cited as, as evidence compelling the conclusion that he did establish that more likely than not he would be tortured consists of Mr. Hosseini's testimony at hearing that two things will, will cause him to be identified. One, his arrest here in the States, but we know that the, the record doesn't contain, none of these press reports contain his name or any way to identify him. And two, that when he returns, the government will have his travel documents. There's nothing in the record that in any way compels the conclusion, contrary to what the board and the immigration judge who reviewed this issue below. Is there an affidavit or statement of some Iranian embassy official about their practice? No, Your Honor. The only thing that Petitioner relies upon is at AR 417, his, Mr. Hosseini's own unsupported speculation that this will happen. That he'll be identified based on those two issues, those two matters. And then he cites to 1704 and 1729 to 30 and 1742. So the country reports establishing that MEK affiliated individuals are targeted by the government along with other organizations. So my, my question was what evidence in the record suggests that he would be identified after removal, if that occurs, as an MEK supporter or sympathizer? And you're saying the only evidence was his. His testimony, Your Honor. His own testimony. Yes, Your Honor. And based upon. And do you agree that I.J. made an adverse credibility determination as to Mr. Hosseini? I believe the immigration judge did find that Mr. Hosseini was not credible, but going to the issue you raised earlier, that. What was the basis upon which the adverse credibility determination was made? What was the substantial evidence of contradiction or other basis for that determination? Your Honor, the record is replete with fraud, and that's the basis of. Well, we know about the fraud, but was it that, that he had lied before in his applications? That goes to the subject matter, the heart of the matter, and therefore, he's not credible as to what he says about Iran? Therefore, the burden is greater. Credible, as we know, credible testimony alone may be sufficient to establish eligibility for relief. But here, where the immigration judge doesn't really know what to believe because there have been so many different stories, there needs to be more. And all we have is Petitioner's unsupported assertions. I mean, there wasn't any contradiction regarding some circumstances of him leaving Iran or being contacted by the Iranian people or anything like that. It was just simply the two very fraudulent applications for asylum in which he assumed names and registration numbers in that Senate himself. That was the basis for the credibility determination? Well, there was much more than that, Your Honor. What was that? Okay, there was the fraudulent, obtaining fraudulent documentation supporting those two fraudulent asylum applications. Was lying on two occasions to different asylum officers. There was lying to the immigration judge. There was fraudulently obtaining a work permit based on fraudulent documentation. Virtually every contact that Mr. Hosseini had from his arrival in this country was based upon lies and fraudulent documentation. And based upon that, and that's where the fraud is established. And I don't believe Mr. Hosseini challenges that the fraud occurred and the fraud is massive. His previous counsel. Do you think that the country conditions do not establish the Iranian embassy's statement that when he arrives back there, they'll demand his travel documents and identify him as a member of the MEK? I don't believe that the country reports address the issue of whether Mr. Hosseini or anyone else will be identified as a member of an opposition group based on travel documents. The country reports and everything cited by Mr. Hosseini go to the issue of what happens if someone is identified. And we know that in Mr. Hosseini's case, he wasn't a leader, although he did take significant action. As a matter of fact, contrary to what Mr. Hosseini now argues, his involvement was much more than just distributing papers and attending a few rallies. We know that he attended three rallies by his own admission, attended three rallies across the country, LA, Denver, and New York. We know that he led the procession in Denver carrying the torch and carrying a banner. We know that, as distinguished from distributing papers, we know that he was selling newspapers in New York in 1998, which is after MEK was designated a foreign terrorist organization, that he knew were published for and by MEK and NCR, the parent organization, if you will. We also know that he paid for a subscription for MEK literature to be distributed to Mr. Tabatabai's office. Mr. Tabatabai, if you'll recall, is the immigration consultant, in this case, the individual that employed Mr. Hosseini. So we know that he attended rallies. We know that he sold newspapers on behalf of MEK. We know that he bought subscriptions for these for business. And we know that he did more than just march. He carried the banner. Is there any other evidence that that's cited by Mr. Adams with respect of Mr. Azimi's observation of Hosseini's fundraising? Well, yes, Your Honor, there is. The fundraising relates to the selling of the newspapers on behalf of MEK and buying subscriptions for business for MEK. The selling of the newspapers is acknowledged by Mr. Hosseini. The subscription is contained within Mr. Azimi's deposition. And I believe- Any citizen who subscribes to a newspaper by this organization is engaged in terrorist activity, is that right? Well, he's not subscribing to, he's marketing. He's out on behalf of- No, his part was he bought a subscription, you said. And he also, he bought a subscription for someone else. And he sold the paper. So he's out on behalf of this designated terrorist organization that he knows has killed Americans and he knows what its goals are. And we know that he knows much about it because we know he had access to the safe house. We know that he recruited, and I can address that issue also with evidence on recruiting. And he is out marketing, selling the papers, buying subscriptions in order to benefit this organization, providing material support, recruiting, and- It's pretty thin, really. I mean, I don't know, I suppose when you sell newspapers, the assumption is that some fitness goes to the organization. I don't, what if it's a losing operation? Well, he's certainly out there doing his best to raise funds for a terrorist organization, Your Honor. The record's replete with his assertions that he believes in what they're doing. He thinks they should move forward and help them. He discussed with Mr. Azimi, Mr. Azimi's becoming involved in the organization. Mr. Adams indicated by citing Administrator Brick at 836, some testimony by Mr. Azimi, which I think charitably can be put as ambiguous, regarding fundraising and recruiting. Do you have anything else that you could point me to, to show that Mr. Azimi's fundraising or recruiting? Well, yes, Your Honor. I think as you recognized, Mr. Azimi's testimony was based upon his observations of Mr. Hosseini and what Mr. Hosseini himself acknowledged. Would you point to me something in the record, some citation that- Certainly, Your Honor. Other than 836? At 833, Mr. Azimi is discussing Mr. Hosseini's involvement in MEK. It states unequivocally, no question, he is involved in MEK. At 833 to 834, and again at 837, Mr. Azimi discusses Mr. Hosseini's access to the safe house based upon information that Mr. Hosseini told him. At 835 to 836, Mr. Azimi characterizes Mr. Hosseini as a strong supporter and describes what a strong supporter is based on his discussions with Mr. Hosseini, somebody who's involved, provides funds. Excuse me. And then finally, at 841, Your Honor, Mr. Azimi discusses the selling of newspapers. There's also information in the investigation report at 786 to 787 that he's a strong supporter involved in fundraising, had access to the safe house. Mr. Hosseini himself testifies at 405 to 410 and 491 to 92 that he was involved in demonstrations in LA in 97, Denver in 97, New York in 98, was a torchbearer in the Denver procession. At 409 to 10 and 476, he acknowledges selling M.E.K. paper. And at 494, he acknowledges that he probably told the Mr. Azimi that he was a supporter of M.E.K. So he's bolstering what Mr. Azimi had said. Mr. Hosseini himself does. Does the Board have to say what statutory clauses were triggered? In other words, he's apparently found to have engaged in terrorist activities. Do they need to say what statute that violates? Well, there needs to be an articulation of why they found what they found, and in this case, there is. They specifically, the Board specifically says that they found pursuant to 212A3B4. Now Mr. Hosseini argues, but you didn't say what section of 212A3B4 these activities fall under. Well, if you, they specifically cited 212A3B4, and they specifically described the activities. So clearly, it's got to be 4BB, solicitation of funds, 5BB, recruitment, and 6CC, material support. Those are the only sections within 212A3B4 that describe, and they describe specifically what Mr. Hosseini has acknowledged doing. So it's really a question, I assume, it's argued it's really just a question of what detail. Material support. I'm sorry, go ahead. Recruitment and material support are the two things. Absolutely. And solicitation of funds. The processions mean nothing, then, I guess, being in those parades and things like that. The processions show that he had knowledge and affiliation with the organization. What does that, which statute does that relate to? Which subclause does that relate to? It doesn't fall under any of those, Your Honor. It just tends to verify that he is, in fact, involved with this organization, which he's acknowledged. The fundraising, the recruiting, all of that are the specific sections within 212A3B4 that I just identified. He reinforces that his connections on the other items covered by the statute aren't mere happenstance. I'm sorry, I don't understand, Your Honor. The fact that he's a supporter, that he attends demonstrations, tends to reinforce, it seems to me, that his connection with these other prongs of the statute isn't a mere happenstance or coincidence. He just happened to be, you know, raising, selling subscriptions. I mean, it shows he's selling it to raise funds for the organization. Absolutely, Your Honor. It tends to show that, at least in terms of whether the evidence compels a contrary conclusion, it seems to me that his involvement in the demonstrations does help the government side of the case. Absolutely, Your Honor. That is our position. He is, as the IJ and the Board recognize, it's something to downplay, his MEK involvement. But that's virtually impossible to do. Is there a precedent in the Ninth Circuit that says that the agency has to identify specific, has to identify the specific subparts of the statute that they claim that they're relying on? Not that I'm aware of, Your Honor, and not that Mr. Hosseini has identified. And as I said, they identified specifically A12, A3, or I'm sorry, 212, A3, B4, and described the conduct specifically. So there's no question what the conduct is and what the basis of the decision was. So basically, we have asylum claim and adjustment claim that this court can address specifically and solely independently on the basis of the fraud. The fraud's established. There's no question it occurred and provides an independent basis for this court to deny the portions of petition for review dealing with asylum and dealing with adjustment. In addition to that, when you reach the terrorism bars, as we've just discussed, it's very clear what his involvement was and that it falls under 212. So there's both the basis for denying the petition with regard to asylum and adjustment and CAT on the terrorism bars and on the fraud. And the fraud is an independent ground. Okay. Your time is coming towards a close. So if you can sum up, I think that would be helpful. Thank you, Your Honor. In addition, because with regard to CAT claims, there's a clear finding by the immigration judge and board that, contrary to Mr. Hussaini's assertion, that he failed to establish. That more likely than not, he would be tortured because he failed to establish he would be identified. Mr. Hussaini has identified no record evidence compelling a contrary conclusion, and that's his burden in this case. Finally, with regard to withholding under 243, as we've indicated in both our motions to remand in our brief, the court should remand for the purpose of allowing the board to determine in the first instance whether their decision would be affected by this court's decision in Chima. However, if the court determines that remand is not appropriate, the court should treat that claim as it did in Chima for CAT withholding and determine that he is, in fact, a danger to U.S. security. Thank you, Your Honor. Thank you very much. And Mr. Adams, your rebuttal, please. I would just like to follow up on a couple of points that the respondents made. Respondent cites the immigration judge's decision, saying that there's no finding that he, the government of Iran, would be able to determine that he's an MEK supporter. But what this court reviews is not the immigration judge's decision, but the Board of Immigration Appeals' decision. That is the final order. And unless the Board of Immigration Appeals simply adopts and does not issue their own decision, the government attorney is referring to the wrong opinion. Respondents say that Petitioner's claim that he would be identified is only based upon his unsupported testimony. That's not correct. As we pointed out, not only did the United States Department of Country report show that they will interrogate him regarding any anti-government activity, but we've also submitted in the record, or he has previously submitted in page 627, is the travel document demonstrating the requirements of citizens of the Republic of Iran. And in particular, it says that... Excuse me, what travel documents? It says travel documents requirement for citizens of the Islamic Republic of Iran. And on number four on that list, for persons, it says, if you're going to be deported by the U.S. Immigration and Naturalization Service, send a copy of all court documents, including all the charges and court orders. So clearly, the government of Iran has laid out that they're going to be looking for the immigration paperwork of the country of the United States in those removal deportation proceedings. And like I say, that is supported by the country reports. And moreover, that's what the Board of Immigration found. The Board of Immigration Appeals pointed out that the government would be able to identify him. And that's the decision that we're looking at in this case. And I want to go back briefly to the security issue. As the government has conceded, pursuant to this court's decision in Chima v. Ashcroft, the case should be remanded to the board because they do not comply with a specific two-part analysis. And in fact, noteworthy of concerns of whether he's a threat to the security of the United States is the fact that the immigration judge, after he had been arrested in the Sting operation and after they held further hearings, he issued a bond of $25,000 that the INS did not appeal. And he was released under bond in August of 1999, all the way through the end of 2002 until the immigration judge issued the final order of deportation. And certainly, if he presented a risk to the security of the United States, that's something that the government would have challenged is a bond allowing him to be released during that time. I also want to follow up quickly on the question regarding the factual findings and whether that's a question of law or simply a question of fact. And I guess to clarify my earlier question, in applying the factual findings to make a determination whether someone is inadmissible or deportable is where you have your question of law. So while we're looking at the factual findings, those factual findings have to be applied to the statute at section 212 and also at 237. And that's where you have your question of law. And finally, the government now seeks to provide the analysis or the rationale for the board's decision, providing the clauses upon which it relies. The government attorney stated some clauses 4, 5, and 6, but the board did not provide these clauses. And instead, we're left with the responsibility of trying to decipher what the basis was for the board's decision. And as such, it should not stand. Thank you. Thank you for your argument. The court thanks both Mr. Adams and Mr. Pichi for excellent arguments. It's a challenging case, and it shall now be submitted. Thank you. Thank you.
judges: Canby, Gould, Bea